# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3886

_____

Sean T. Wright

*Petitioner - Appellant*

v.

Michael Bowersox

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 10, 2013
Filed: July 26, 2013

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and ROSE,[1] District Judge.

_____

ROSE, District Judge.

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa, sitting by designation.

Sean T. Wright was convicted of two counts of statutory sodomy in a Buchanan County, Missouri trial court and sentenced to life plus seven years. The Missouri Court of Appeals affirmed the conviction on direct appeal, *State v. Wright*, 245 S.W.3d 930 (Mo. Ct. App. 2008) (per curiam), and later affirmed the denial of Wright's motion for post-conviction relief. *Wright v. State*, 313 S.W.3d 731 (Mo. Ct. App. 2010) (per curiam). Wright filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, raising twenty-two grounds for relief. The district court[2] denied the petition and denied a certificate of appealability. This Court granted a certificate of appealability on two of Wright's claims, for which Wright appeals the denial of relief. We affirm.

## I. FACTUAL BACKGROUND

Wright was charged with statutory sodomy in the first degree and statutory sodomy in the second degree, stemming from allegations that he had sexually abused two children of a woman with whom he was cohabitating. Wright's first trial resulted in a mistrial on September 16, 2004. Prior to his second trial, Wright moved to suspend the proceedings because a court in Clay County, Missouri had ordered a psychological evaluation to determine his competency to stand trial on similar charges. The circuit court denied Wright's motion, concluding that it was not bound by the decision in Clay County.

Wright then requested he be permitted to represent himself at trial. The circuit court conducted a hearing to ensure Wright was knowingly and voluntarily waiving his right to representation. During the hearing, the circuit court judge asked Wright about the pending evaluation in the Clay County proceedings. Wright stated he expected the exam to show he was competent, but had been previously diagnosed with bipolar disorder and had discontinued his medication while incarcerated. After

---

[2]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

the colloquy with Wright, the circuit court judge granted his request to represent himself and appointed standby counsel. Wright proceeded to trial pro se, and a jury convicted him on both counts on July 28, 2005.

Prior to sentencing, the Buchanan County circuit court was advised that the Clay County examination concluded Wright was not competent to stand trial in that case. Because of this conclusion, the circuit court postponed sentencing to determine whether Wright should undergo a competency evaluation. Following a hearing on the issue, the circuit court ordered an evaluation and held a subsequent competency hearing. At that competency hearing, three psychologists testified that, in their opinion, Wright was not competent to have stood trial or to have proceeded pro se. The remaining psychologist, Dr. Delaney Dean, testified Wright was competent to do both.

Following the hearing, the circuit court concluded that Wright was in fact suffering from bipolar I disorder, but that he was not suffering from a manic episode at the time of his waiver of counsel or trial in Buchanan County. As a result, the circuit court proceeded to sentencing and sentenced Wright to life imprisonment plus seven years. Wright's conviction was affirmed on direct appeal. At a post - conviction hearing in February 2009, the circuit court refused to reopen the record to include testimony of Dr. Stephen Peterson, who had performed a more recent evaluation of Wright. The appellate courts upheld the circuit court's competency finding and the validity of the conviction.

Wright then filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. In his petition, Wright alleged that the trial court erred in determining he was competent to stand trial and waive his right to counsel. The district court denied relief on all grounds and refused to issue a certificate of appealability. The United States Court of Appeals for the Eighth Circuit granted Wright a certificate of appealability for grounds 1 and 19, which contest the trial court's findings on his

competency. Wright appeals the denial of habeas relief on those grounds, and also contends the district court erred in failing to hold an evidentiary hearing on his competency.[3]

## II. STANDARD OF REVIEW

We review a petition for writ of habeas corpus pursuant to the standards enumerated in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Because Wright's claims were "adjudicated on the merits in State court proceedings," he is entitled to relief only if he shows that the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2); *Edwards v. Roper*, 688 F.3d 449, 453 (8th Cir. 2012) (citations omitted). On appeal of a district court's denial of a § 2254 petition, we review the district court's findings of fact for clear error and its conclusions of law de novo. *Flowers v. Norris*, 585 F.3d 413, 416 (8th Cir. 2009) (citations omitted).

## III. WRIGHT'S CLAIMS

Wright argues that the state court's determination that he was competent to stand trial and waive his right to counsel (1) does not find support in the record and was therefore an unreasonable determination of the facts in light of the evidence, and (2) was an unreasonable application of his rights under the Sixth and Fourteenth Amendments. We find both allegations unpersuasive.

---

[3]On May 23, 2013, Wright filed a pro se motion to dismiss his appeal, followed by a motion to withdraw his motion to dismiss on June 12, 2013. We grant Wright's motion to withdraw his previously filed motion to dismiss.

-4-

To address whether the Missouri trial court's competency determination was unreasonable in light of the evidence, it is necessary first to recount the proceedings in the circuit court. The state circuit court concluded Wright was competent to have stood trial and waived his right to counsel following a hearing in which four expert witnesses testified. Two of the expert witnesses—Dr. Arnaldo Berges and Dr. Jeanette Dunkin—had interviewed Wright in connection with the Clay County case and determined that he was experiencing a manic episode at the time of that interview, rendering him incompetent to stand trial. However, they "acknowledged that they had no opinion to a reasonable degree of medical or psychological certainty as to whether the Defendant was suffering from a manic episode during [the waiver of counsel hearing] or during the trial" in the case. App. at 88. Further, both conceded that if Wright had not been in a manic episode with psychotic features, he would likely not be incompetent to waive his right to counsel or stand trial. Finally, both experts agreed that the circuit court "would be in a good position to detect the features of mania and psychosis over a trial lasting several days." *Id.* at 90.

Dr. Jeffrey Kline also testified at the competency hearing, having interviewed Wright nearly five months after his second trial. Dr. Kline was the only expert to conclude that Wright was affirmatively suffering from a manic episode at the time of his waiver hearing and trial. The state court noted that Dr. Kline had no evidence of Wright's conduct or demeanor during either of these two proceedings and Dr. Kline had cited Wright's dissatisfaction with his attorney and desire to have control over trial strategies as examples of his "delusional thinking." Dr. Kline stated that his conclusion of incompetency "was based primarily on his perceived presence of delusional thinking." App. at 91.

Finally, Dr. Delaney Dean testified that the history upon which the other experts relied in reaching a diagnosis consisted only of unconfirmed self-reporting

by Wright. She also concluded that the other experts' determination of psychosis stemmed from a fundamental misunderstanding of the nature of the complaints and pro se filings Wright made, all of which Dr. Dean thought to be fairly typical of defendants in Wright's position. After evaluating Wright's history and filings, Dr. Dean found no evidence of delusions or psychosis and concluded Wright was competent at the time of both proceedings. Based on this testimony, the circuit court concluded Wright, while suffering from a bipolar I disorder, was not experiencing a manic episode at the time of either the waiver hearing or the trial.

A state court's competency determination is a factual finding and accordingly presumed to be correct in a federal habeas proceeding. *Elam v. Denney*, 662 F.3d 1059, 1064 (8th Cir. 2011) (citations omitted). Moreover, a competency determination involves "an unreasonable determination of the facts in light of the evidence presented in state court proceedings only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003) (internal quotation and citations omitted). Accordingly, the state court's conclusion that Wright was competent to stand trial and represent himself is presumptively correct unless Wright can demonstrate the conclusion does not find support in the record. He is unable to do so.

In making its competency determination, the trial court clearly and carefully weighed the credibility of the testifying witnesses and their findings. The court found testimony and findings that rested on self-reporting by Wright to be less credible than testimony based on a more objective review of Wright's history and filings. The court also favored the testimony of Dr. Dean, who was intimately familiar with courtroom procedures and processes and reviewed Wright's motions, filings, and oral complaints within those contexts, concluding that what the other experts considered "delusional thinking" were actually typical complaints for defendants preparing to go to trial. Moreover, each of the experts testified that at least some of the symptoms of

a manic episode would be readily apparent to a layperson, especially over the course of many interactions or an interaction of significant duration. However, the court had observed no indications of manic behavior: "[t]he Defendant did not exhibit hyperactive movements or an increased energy level, an angry or irritable affect, disjointed thinking, an inability to focus on issues raised or inability to adjust due to any abnormal fixation, delusional thinking, grandiose thinking, hallucinations, [or] depression . . . ." App. at 96.

In effect, Wright contends that the conclusions of the other three experts are more persuasive than the testimony of Dr. Dean and the court's observations. This argument misunderstands the level of deference afforded to the state court in these circumstances. In order for the court to have made an unreasonable determination of the facts in light of the evidence, Wright must have demonstrated that the court's findings "do not enjoy support in the record"—not merely that a different, reviewing court may have come to an alternate conclusion. At most, Wright has established that a different court may have interpreted the evidence presented at the competency hearing differently. This showing, however, does not amount to an unreasonable determination of the facts in light of the evidence. *Wood v. Allen*, 130 S. Ct. 841, 849 (2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.").

B.

Wright also argues that the state court's determination was an unreasonable application of clearly established federal law. A state court decision involves an unreasonable application of clearly established federal law when, "in the federal court's independent judgment the relevant state-court decision not only applied clearly established federal law erroneously or incorrectly, but also did so

unreasonably."[4] *Nicklasson v. Roper*, 491 F.3d 830, 834 (8th Cir. 2007) (quotation and marking omitted). Clearly established federal law "is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). At the time of the trial court's decision, the clearly established federal law concerning Wright's competence to stand trial and waive his right to counsel was outlined in *Godinez v. Moran*, 509 U.S. 389 (1993). In that case, the Supreme Court held that the competency required to stand trial and waive the right to counsel is the same standard.[5] *Godinez*, 509 U.S. at 399. As a result, the relevant inquiries for whether Wright was competent to waive his constitutional rights were whether he had "sufficient present ability to consult with his lawyer with a reasonable degree of

[4]As a preliminary matter, we note that the district court in this case mistakenly identified the relevant inquiry under AEDPA as whether the state court's adjudication of Wright's competency was a "misapplication of" clearly established federal law. *See Wright v. Bowersox*, Case No. 11-0462, 2011 WL 5089442, at *6 (W.D. Mo. Oct. 25, 2011). However, having reviewed the district court's written opinion, we are confident that the court evaluated Wright's petition with respect to the proper "unreasonable application" inquiry and any reference to a "misapplication" of federal law was inadvertent. Further, even if the district court had applied the "misapplication" standard, such a mistake would be favorable to Wright. The Supreme Court has distinguished between a "misapplication," or "erroneous or incorrect" application, of clearly established federal law and an "unreasonable application" of clearly established federal law, concluding that the former is a more lenient standard than that required by AEDPA. *See Williams v. Taylor*, 529 U.S. 362, 410–11 (2000). Accordingly, even if the district court in fact utilized the "misapplication" standard, any error would be to Wright's benefit. Moreover, because the district court concluded the state court's adjudication was not a "misapplication" of federal law, it could not have concluded that the adjudication was an "unreasonable" application of federal law, rendering the possible error here harmless. Regardless, for the reasons that follow, we affirm the judgment of the district court on de novo review.

[5]A defendant's waiver of his right to counsel must also be knowing and voluntary, but this is a separate and distinct inquiry from whether he is *competent* to waive his right to counsel. *Godinez*, 509 U.S. at 400–01.

rational understanding" and had "a rational as well as factual understanding of the proceedings against him." *Id.* at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (internal quotation marks omitted)).

The state court correctly identified *Godinez* as the contemporary controlling standard for whether Wright was competent to stand trial and to waive his right to counsel. Based on its factual findings, which we have already deemed reasonable, the court concluded:

> At all relevant times, the Defendant had sufficient present ability to consult with an attorney with a reasonable degree of understanding. Upon his knowledgeable and voluntary waiver of counsel, he had sufficient present ability to represent himself and personally deal with the issues raised at trial with a reasonable degree of understanding. Defendant had a rational as well as factual understanding of the proceedings against him. Defendant was not suffering from the influences of any psychotic features associated with a manic episode such as delusional thinking during the waiver of counsel hearing or during the trial.

App. at 93. The court neither erroneously nor incorrectly applied the *Godinez* standard to its factual findings. To the contrary, it identified the correct standard for competency and pointed to specific facts, testimony, and evidence that reasonably demonstrated Wright met that standard. Accordingly, the state court's decision did not involve an unreasonable application of federal law.

C.

Wright also claims the district court erred because it failed to consider whether Wright was competent to waive counsel under a "new standard" set forth in *Indiana*

*v. Edwards*, 554 U.S. 164 (2008). In *Edwards*, the Supreme Court held that states are constitutionally permitted to insist upon counsel for defendants found to be competent enough to stand trial but who are not competent to conduct trial proceedings by themselves. *Edwards*, 554 U.S. at 177–78. The Supreme Court issued this decision after Wright's conviction and direct appeal were final, but before his collateral proceedings. Wright contends *Edwards* created a new rule requiring a heightened standard for determining competency to waive counsel, the rule must be applied retroactively, and, under this heightened standard, the district court should have found him incompetent to waive counsel. We disagree.

Even if *Edwards* retroactively applies,[6] it does not change the outcome here. First, *Edwards* did not announce a new constitutional rule for determining competency when a defendant wishes to waive his right to counsel; it merely allows, but does not require, states to have a heightened standard. *Jones v. Norman*, 633 F.3d 661, 669 (8th Cir. 2011) ("[T]he *Edwards* Court held only that a state *can* insist on representation for defendants who are competent to stand trial but who still suffer from 'severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.'") (quoting *Edwards*, 554 U.S. at 178) (emphasis added). As a result, it would not be an unreasonable determination of clearly established federal law for the state court to decline to impose a heightened standard of competency, as *Edwards* announced no such requirement.

Moreover, retroactively applying *Edwards* does not change our conclusion that the state court did not unreasonably determine the facts in light of the evidence in finding Wright competent to waive his right to counsel and conduct his own defense. As discussed in Section III.A, *supra*, the state court found Wright competent after personally viewing Wright's own actions and conduct and considering the testimony

---

[6]Because Wright's claim fails even under the assumption that *Edwards* is retroactively applicable, we need not determine whether it is indeed retroactive under *Teague v. Lane*, 489 U.S. 288 (1989).

and credibility of numerous expert witnesses. The application of *Edwards* is inapposite to Wright's burden to show the state court's factual findings do not enjoy support in the record, and we have already found they do.

D.

Finally, Wright contends the district court erred in failing to hold an evidentiary hearing on his petition. Assuming this issue is properly before us,[7] the district court did not err in refusing to hold an evidentiary hearing.

Evidentiary hearings in habeas proceedings are barred unless the petitioner "was unable to develop his claim in state court despite diligent effort." *Williams v. Taylor*, 529 U.S. 420, 437 (2000). "In that case, the decision to grant such a hearing rests in the discretion of the district court." *Williams v. Norris*, 576 F.3d 850, 859 (8th Cir. 2009) (internal quotation and citation omitted). We review a district court's refusal to hold an evidentiary hearing under these circumstances only for abuse of discretion. *Nooner v. Hobbs*, 689 F.3d 921, 938 (8th Cir. 2012).

Here, Wright claims he was entitled to a hearing in the district court to rebut the state court's factual finding of competency. Specifically, Wright sought to offer the testimony and report of Dr. Stephen Peterson, who evaluated Wright following

_____

[7]We note Wright was not granted a certificate of appealability on this ground and therefore have the discretion to decline to review the district court's denial. *See* 28 U.S.C. § 2253(c)(3) (a federal court of appeals considers only the "specific issue or issues" listed in the certificate of appealability). However, we will assume for the sake of argument that Wright's claim concerning the evidentiary hearing is subsumed within his claim that the district court erred in denying Ground One and Ground Nineteen, and we will address the claim. *See Smith v. Bowersox*, 311 F.3d 915, 920–22 (8th Cir. 2002) (considering whether the district court erred in denying relief without first holding an evidentiary hearing after granting a certificate of appealability only on the question of whether counsel's representation was constitutionally deficient).

his post-conviction motion hearing, because it would prove he was not competent at the time of his trial and waiver of counsel. First, Wright has not established he was unable to develop his claim in state court. Wright presented evidence concerning his competency at hearings in the state circuit court prior to his sentencing and at an evidentiary hearing in state court in his post-conviction proceedings.

Second, this hypothetical rebuttal evidence, even if it were to prove Wright's incompetence, would still not entitle him to habeas relief on his asserted grounds. Even assuming Dr. Peterson's testimony demonstrated Wright to have been incompetent at the time of his trial and waiver of counsel, the testimony was not available to the state court at the time of its decision. Accordingly, this testimony would have no bearing on whether the state court's decision was based on an unreasonable determination of the facts because the testimony was not available for consideration by the state court. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398–1401 (2011). Moreover, for the reasons discussed above, the testimony would have no impact on our analysis and conclusion regarding whether the state court unreasonably applied clearly established federal law or whether *Edwards* is applicable to Wright's claims.

For the foregoing reasons, the judgment of the district court is affirmed.

_____