Cite as 2019 Ark. App. 585

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR–19–199

| | |
|---|---|
| ROSCOE FLETCHER | **Opinion Delivered:** December 11, 2019 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION [NO. 60CR-16-1477] |
| V. | |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE HERBERT T. WRIGHT, JR., JUDGE |
| | AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Roscoe Fletcher[1] appeals from the Pulaski County Circuit Court's denial of his petition for postconviction relief pursuant to Ark. R. Crim. P. 37.1. Fletcher raises two points on appeal: (1) the trial court erred in failing to find that trial counsel was ineffective when she failed to investigate alibi witnesses, failed to put on an alibi defense, and failed to call alibi witnesses to testify at trial; and (2) the trial court erred when it abruptly moved the date of his evidentiary hearing and would not allow him sufficient time to put a witness on notice so she could attend and testify at the hearing. We affirm the denial of postconviction relief.

---

[1]Fletcher refers to himself as both "Roscoe Fletcher, Jr." and "Roscoe Fletcher, Jr. III."

## I. *Ineffective Assistance of Counsel*

In an appeal from a trial court's denial of a petition for postconviction relief under Rule 37.1, the sole question presented is whether, based on the totality of the evidence, the trial court clearly erred in holding that counsel's performance was not ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the two-prong *Strickland* test, a petitioner raising a claim of ineffective assistance of counsel must first show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Bond v. State*, 2013 Ark. 298, 429 S.W.3d 185. The petitioner must also show that counsel's performance fell below an objective standard of reasonableness. *Id*. There is a strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). The appellant has the burden of overcoming that presumption by identifying the acts and omissions of trial counsel, which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Hickey v. State*, 2013 Ark. 237, 428 S.W.3d 446.

With respect to the second prong of the *Strickland* test, the petitioner must show that counsel's deficient performance so prejudiced his defense that he was deprived of a fair trial. *Holloway v. State*, 2013 Ark. 140, 426 S.W.3d 462. Such a showing requires that the petitioner demonstrate a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id*. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial

2

process rendering the result unreliable. *Id.* There is no reason for a court deciding an ineffective-assistance-of-counsel claim to address both components of the *Strickland* standard if the petitioner makes an insufficient showing on one of the prongs. *Id.*

## II. *Procedural History and Background*

At trial, the testimony revealed that on the evening of March 20, 2016, Willie Wilson was visiting in the home of his friend, Cassyophis Williams, when two men—a younger man with dreadlocks and an older man wearing masks and carrying guns—entered Williams's residence and robbed them. At trial, Wilson identified Fletcher as the older robber. A Pulaski County jury convicted Fletcher of aggravated residential burglary, theft of property, and aggravated robbery. He was sentenced as a habitual offender to an aggregate term of forty-one years' imprisonment. We affirmed his convictions on direct appeal to this court. *Fletcher v. State*, 2018 Ark. App. 113, 543 S.W.3d 547.

Fletcher then filed a petition for postconviction relief, arguing that trial counsel, Brandy Turner, had provided ineffective assistance because she failed to investigate and interview two potential witnesses: his girlfriend and alibi, Charlotte Garrett, and an alleged co-perpetrator, Lisa Overton.[2]

An evidentiary hearing was scheduled for October 3, 2018, but the date was later changed to October 2. At the hearing, Turner and Garrett testified. Officer Matthew Peach testified as well. Turner testified that she had reviewed Officer Peach's incident report prior to trial and saw that Garrett had told him that a young black male with light skin and

_____

[2]Fletcher contends that both victims alleged that Overton played a critical role in the robbery in that she had knocked on Williams's door and allowed the robbers to push past her into the home.

dreadlocks named Brandon had been at her house with Fletcher earlier on the evening of the robbery. Turner stated that this description matched a victim's description of one of the two robbers. Turner testified that, although she had spoken with Garrett at one of Fletcher's court appearances, she did not think calling Garrett to testify at trial was a good idea because her testimony could have hurt Fletcher's case. Turner pointed out that the only victim who was permitted to testify and could identify Fletcher was Wilson, who was a convicted drug dealer. The other victim was not permitted to testify because she had tested positive for cocaine. Turner testified that not calling Garrett was trial strategy because the State could have "impeached" Garrett with what she had initially told investigators.

Turner testified that she did not interview Overton because she could not locate her. Turner stated that no one had an address or a phone number for Overton. Turner said that she, her investigator, and the prosecutor had tried to find Overton without success. When Fletcher asserted that Overton had been sent back to prison, Turner testified that she was unaware of that. Turner later testified that, even if she had found Overton, Overton could have potentially identified Fletcher as one of the robbers.

Garrett testified that Fletcher was at home in bed with her when police came to search her house and that Fletcher had not left the house that night. She denied telling Officer Peach that Fletcher had a friend named Brandon who had visited before the robbery and denied giving a description of that friend. She likewise denied later telling Detective Goree that Fletcher had been with a man named Brandon.

After Garrett was excused, Fletcher said that he would like to call Overton to the stand but did not see her in the courtroom. The trial court asked whether he had subpoenaed

her, and Fletcher said that he thought the prosecutor had. The prosecutor launched into a lengthy explanation detailing his unsuccessful efforts to locate Overton. When the prosecutor said that he was able to locate Garrett to notify her of the new hearing date, Fletcher said, "If I'm not mistaken, I want to say Miss Overton thinking it's tomorrow, too, 'cause they was totally thinking it was the third." The trial court asked Fletcher whether he had communicated with Overton, and he responded, "I talked to her son, and her son said that she was gonna be here on the third, but that was before we knew it was gonna be today. And I had no way of calling her once I left, you know, prison." The hearing proceeded without Overton.

Officer Peach testified that Fletcher admitted being at the victim's house before the robbery but insisted that he had left shortly afterward, which was contrary to Garrett's earlier testimony. He also said that Fletcher had asserted that the two victims owed money to drug dealers and that it was drug dealers who had robbed the victims. Officer Peach testified that Fletcher claimed to have seen two men running from the direction of the victim's home but did not explain how he could have seen them when he was in bed asleep with the blinds closed, as testified to by Garrett. Officer Peach said that Fletcher had denied knowing anyone named Brandon but said that his friend, "Mack," had visited earlier that evening.[3]

In its November 6, 2018 order, the trial court denied Fletcher's claim as it related to Garrett because not calling her to testify was a matter of trial strategy in that the witness

---

[3]Fletcher argues in his brief on appeal that, without both a written and recorded statement from him and without a *Miranda*-rights waiver form signed by him, Officer Peach's testimony about statements he (Fletcher) made were inadmissible hearsay, to which Turner should have objected at trial. Because Fletcher is making this argument for the first time on appeal, we do not consider it. *Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003).

would have been confronted with her prior statements given to police. The trial court also denied Fletcher's claim with respect to Overton. The court noted that there was no trial strategy involved in the decision—trial counsel simply had no access to Overton because she could not be located.

## III. *Discussion*

### A. Alibi Witnesses

Fletcher argues that he had given Turner the names of both Garrett and Overton and had asked her to interview them and call them as alibi witnesses at his trial. According to Fletcher, trial counsel was ineffective for not investigating and calling these witnesses to testify. The decision of trial counsel to call a witness is generally a matter of trial strategy that is outside the purview of Rule 37.1. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to his or her client. *Id.* When assessing an attorney's decision not to call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment that experienced advocates could endlessly debate. *Adams v. State*, 2013 Ark. 174, 427 S.W.3d 63. The fact that there was a witness or witnesses who could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness. *Id.* Even if another attorney may have chosen a different course, trial strategy is a matter of professional judgment even if it proves unsuccessful. *Hickey*, *supra*.

Fletcher notes that Turner admitted she would not have called Garrett to testify, even if she had interviewed her, because of contradictory statements Garrett had allegedly given to police. Fletcher points out that those statements in Officer Peach's incident report

6

had not been recorded and that Garrett had not written and signed the statements herself. He contends that Officer Peach's testimony at trial about what Garrett told him would have been inadmissible hearsay—likewise with Detective Goree. Fletcher asserts that, in any event, the jury could have believed Garrett, who had no criminal record, instead of Officer Peach and a victim with a criminal record.

We agree with the trial court that not calling Garrett to testify amounted to reasonable trial strategy on Turner's part. Garrett's testimony could have hurt Fletcher's case. Officer Peach's incident report contained statements attributed to Garrett, which were made contemporaneously with the opening of the investigation into the crimes. One of those statements contained a detailed description of Fletcher's friend, which matched a victim's description of one of the two robbers. Moreover, Garrett testified that she is still Fletcher's girlfriend. We cannot say that the trial court clearly erred in finding that trial counsel was not ineffective for not calling Garrett as an alibi witness because she had an obvious bias, and her credibility could have been damaged with prior statements she had given to police. Fletcher did not raise an argument below that Officer Peach's testimony about Garrett's statements would have been inadmissible hearsay. An appellant cannot change the grounds supporting a claim of ineffective assistance of counsel for the first time on appeal. *Pollard v. State*, 2014 Ark. 226 (per curiam).

Although Fletcher also refers to Overton as an alibi witness on appeal, he did not characterize her as such in his Rule 37 petition. Indeed, she could not have provided an alibi for Fletcher. According to Fletcher, Overton would have testified only that she did not participate in any robbery and knew absolutely nothing about the robbery. Fletcher surmises

that, because the State did not charge Overton with a crime in connection to the robbery, the State must have believed that she had not committed a crime. Fletcher concludes that Overton's testimony, together with the State's refusal to charge her with a crime, would have created a "major discrepancy" in the victims' statements and would have undermined the testimony of the only victim to testify at trial.

We agree with the trial court's decision not to fault Turner for failing to interview Overton and call her as a witness at trial because Turner had no access to Overton. According to Turner's testimony, she and her investigator did attempt to locate Overton. The prosecutor searched for Overton as well. Turner could not interview and call as a witness someone who appeared to be evading detection. It also appears from Fletcher's comments to the trial court that he was generally aware of Overton's whereabouts but did not share that information with trial counsel. We agree with the trial court that Turner was not ineffective for not interviewing and calling to testify a witness she could not find.

## B. Continuance

Fletcher argues that Overton did not get the opportunity to give her testimony because the trial court did not provide her with notice of the new hearing date. Fletcher states that, no matter who is at fault for not ensuring that Overton received notice, the trial court could have easily set another hearing date. Fletcher asserts that he was denied his right to develop the factual bases for his claims because the trial court did not continue the hearing. Fletcher, however, did not request a continuance to secure Overton's presence at the hearing. The trial court could not have erred in failing to grant relief that was not sought.

Affirmed.

GRUBER, C.J., and HARRISON, J., agree.

*Roscoe Fletcher, Jr.*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.